LEE HICKOX

*v.*

THE STATE OF ILLINOIS.

*Opinion filed December 12, 1890.*

RESPONDEAT SUPERIOR—*State is liable for damages caused by bullets used by militia in target practice.* The damaging of property by bullets during target practice by the State Militia is not merely the act of a servant in which the servant could exercise a choice or make use of his judgment; it is the military acting in strict subordination to the civil power, and the State is liable.

The petition in this case was filed on the 28th day of April, A. D. 1890, alleging that claimant is the legal owner in fee of the lands described in the petition, consisting of 240 acres occupied by claimant and used by him for agricultural purposes; that the State of Illinois owns and controls certain real estate described in the petition which is used by the State as a permanent camp ground known as Camp Lincoln; that a part of said real estate so owned and controlled by the State of Illinois is used by and under the authority of the State at stated times during each year for active drill in camp including rifle practice as required by law.

That leaden balls fired by the members of the National Guard while at rifle practice at said camp pass over and upon petitioner's lands with such great frequency as to greatly endanger the lives of your petitioner, his family and servants as well as all domestic animals, and such acts have greatly depreciated the value of claimant's lands and the valuable improvements thereon; that prior to the use of said lands so owned and controlled by the State as a rifle range claimant's lands were worth $100 per acre and that now they are worth not more than $20 per acre.

Petition further charges that during the year 1889 a part of said real estate so owned by claimant contained a valuable crop of hay of the value of $560, and that because of the danger from the frequent discharge of such leaden balls from Camp Lincoln upon and over said lands it became so dangerous to the lives of petitioner and his servants that said crops could not be gathered and necessitated the abandonment and consequent loss of said crop.

Petition also claims $15.00 damages for loss of services of one H. W. Crawford, a servant of claimant, who was on the 15th day of July, 1889, seriously injured while in claimant's service on said farm by a rifle ball fired by a member of said Illinois National Guard while at rifle practice at said camp.

The evidence in this case very clearly shows that during the months of July and August of the year 1889, regiments of the Illinois National Guard were encamped at Camp Lincoln and that while so encamped said Guards were required by the State to perform target practice, and for that purpose twenty targets were placed at the foot of a natural hill on or near the north line of the camp; the hill was fifty feet or more in heighth; the target practice was carried on at a distance ranging from two hundred to one thousand yards distant from said targets, and was kept up from day to day during the encampment. In this target practice the Springfield rifle is used carrying a 45 calibre ball; these

rifles will carry a ball the distance of one mile. The evidence is to the effect—that during the rifle practice as above stated those 45 calibre balls were thrown over the hill and with great frequency thrown upon the farm of claimant—at one time striking and seriously wounding a farm hand of claimant's; at other times falling about the dwelling occupied by claimant and passing through his barns, orchards and upon the fields where corn and other crops were grown, with such frequency as to render it extremely dangerous to the lives of the occupants. Claimant was prevented from harvesting a very heavy crop of hay and clover grown upon the north part of said farm in the summer of 1889, and has been put to great inconvenience and placed in great danger by reason of such target practice.

The legislature has appropriated the sum of eighty-five thousand dollars for the procurement of permanent camp and rifle range and for other purposes and authorized the Auditor of the State to draw his warrant on the State Treasurer for said sum upon the voucher of the Adjutant General, approved by the Governor. Session laws of 1885, page 216.

On the 1st day of May, 1886, the Governor appointed a Commission to locate and purchase a suitable site for a permanent camp and rifle range as provided for as above; special order No. 29, special order book of 1886, page 505, in Adjutant General's office.

This Commission reports the purchase of Camp Lincoln for the sum of $15,000; Adjutant General's report of December 31, 1886, page 209. For this sum and in full payment for the lands on which Camp Lincoln is situated the Adjutant General drew his voucher as provided in the session laws above referred to. The voucher is dated May 5, 1886, No. 9,720; was approved by R. J. Oglesby, the then Governor, and together with the receipts for that sum by the then owners of this tract of land is on file in the Auditor's office. The deed to this tract of land is duly entered of record in the recorder's office of Sangamon county.

Article 4, chapter 129 of our revised statutes provides that the Illinois National Guard shall parade for drill not less than three nor more than four days annually. It provides also that during the encampment the Guards shall engage in target practice. The constitution of the State of Illinois provides that the military shall be in strict subordination to the civil power and that private property shall not be taken or damaged for public use without just compensation.

While we conclude as is claimed by the Attorney General that the State is not liable for the torts of its servants we hold that the authorities above referred to show that the National Guards were acting under direct authority of the laws of the State. The State had purchased the camp ground, had expended its money in preparing the ground for a camp, had provided and set up the targets, had purchased the ammunition and the rifles, had prescribed the time and place for this practice. It was not the exercise of the judgment of a servant—it was the strict compliance of the military to the civil power. The act complained of here is not merely the act of a servant in which the servant could exercise a choice or make use of his judgment; it is the military acting in strict subordination to the civil power. This is something more than mere negligence of a servant. The act complained of here as shown by the evidence is kindred to the damaging of private property for public use for the time being. And while we are of the opinion that the lands have not been damaged by the act complained of yet for the loss of crops and the other circumstances shown in this case as sustained by the claimant, we are of the opinion that the State is liable and we have fixed the liability at the sum of four hundred and fifty dollars and the award will be for that sum.